Case 3:25-cv-00020-JHY-JCH   Document 26   Filed 10/23/25   Page 1 of 15
Pageid#: 196

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
October 23, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Mohammed Azimi, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:25-cv-00020 |
| Stephanie Michelle Bunch *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

On April 15, 2025, Plaintiff Mohammed Azimi, proceeding *pro se*, filed this action against the Albemarle County Commonwealth's Attorney's Office, Commonwealth's Attorney James Hingeley, Assistant Commonwealth's Attorney Holly Vradenburgh, and Stephanie Michelle Bunch, the Clerk of the Albemarle-Charlottesville Juvenile and Domestic Relations ("JDR") Court.[1] Azimi alleges that Defendants engaged in misconduct during state-court proceedings that violated his rights under the United States Constitution, the Virginia Freedom of Information Act ("FOIA"), and the Virginia Public Records Act ("VPRA"). This matter is before the court on Defendants' motions to dismiss (Dkts. 7, 12, 13). For the reasons that follow, the court will grant Defendants' motions.

---

[1] Azimi has filed three other lawsuits in this court challenging various state officials' and attorneys' conduct during child-custody, divorce, and criminal proceedings against him in state court. *See Azimi v. Pustilnik*, No. 3:25-cv-00024 (filed Apr. 21, 2025); *Azimi v. Zug*, 3:25-cv-00041 (filed May 22, 2025); *Azimi v. Worrell*, No. 3:25-cv-00043 (filed May 27, 2025).

## I.   Background

Azimi is a father of two minor children and resident of Charlottesville, Virginia. (Compl. ¶ 9 (Dkt. 1).)  He and his former wife are involved in a child-custody dispute before the Albemarle-Charlottesville JDR Court.  (*See id.* ¶¶ 14–17.)  The current status of the child-custody proceedings is unclear.

Azimi alleges that Defendants engaged in a "coordinated pattern of obstruction, deception, and misconduct" to interfere with state-court proceedings, deny him access to public records, and deprive him of access to his children.  (*Id.* ¶¶ 2–3.)  He first alleges that Bunch, the JDR Court clerk, misled a New York family court during a Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") coordination call by expressing uncertainty about the availability of an Albemarle-Charlottesville JDR Court judge for an April 15, 2024, hearing.  (*Id.* ¶¶ 14–15.)  Although Bunch confirmed minutes later that the Albemarle-Charlottesville JDR Court judge would preside over the hearing, Azimi claims that Bunch's statements caused the New York court to temporarily assume jurisdiction over the child-custody proceedings and "undermin[ed]" his custody case in Virginia.  (*Id.* ¶¶ 16–17.)

Azimi also alleges that Defendants failed to respond to various Virginia FOIA requests he submitted in 2024 "to obtain judicial schedules and records of judicial reassignment." (*Id.* ¶ 18; *see id.* ¶¶ 19–23.)  He filed a mandamus action in state court to challenge the FOIA responses.  (*Id.* ¶ 24.)  The state court entered an order on March 21, 2025, holding that the Commonwealth's Attorney's Office had fully complied with its FOIA obligations.  (*Id.* ¶ 25.) Azimi alleges that the court, in entering that order, ignored "clear evidence to the contrary" and "deliberately omitted reference to the Office's delayed and incomplete conduct." (*Id.*)

Azimi sues Hingeley, Vradenburgh, and Bunch in their individual and official capacities and names the Albemarle County Commonwealth's Attorney's Office as a fourth defendant. (*Id.* ¶¶ 10–13.)  His complaint alleges claims under 42 U.S.C. § 1983 for violations of his First Amendment rights and violations of his Fourteenth Amendment due process and equal protection rights.  (*Id.* ¶¶ 27–29.)  He also claims that Defendants conspired to deprive him of his civil rights, in violation of 42 U.S.C. § 1985(3), and neglected to intervene or correct constitutional violations, in violation of 42 U.S.C. § 1986.  (*Id.* ¶¶ 30–31.)  In addition to his federal claims, he alleges state-law claims for violations of the Virginia FOIA and the VPRA. (*Id.* ¶ 32.)  It is unclear whether Azimi intends to allege each cause of action against every Defendant.  The complaint requests declaratory, injunctive, and monetary relief and also asks the court to refer Defendants to the United States Department of Justice for criminal investigation.  (*Id.* at 6–7.)

In addition to his complaint, Azimi has filed multiple letters in which he repeats his allegations in this case and from his other cases pending before this court, raises additional concerns about the child-custody proceedings, and asks the court to order Defendants not to retaliate against him.  (*See* Dkts. 21, 23, 25.)  He also has filed several exhibits related to the child-custody litigation and his FOIA requests.  (*See* Dkt. 1-1; Dkts. 23-1 through 23-8.)

Defendants filed motions to dismiss the complaint under Rules 12(b)(1), 12(b)(6), and 17 of the Federal Rules of Civil Procedure.[2]  (Dkts. 7, 12, 13.)  The court issued *Roseboro* notices

---

[2] The motion to dismiss filed by Hingeley, Vradenburgh, and the Albemarle County Commonwealth's Attorney's Office also cites Rule 12(b)(2), (*see* Dkt. 7), but those Defendants do not raise any objections to personal jurisdiction in their briefing.

to Azimi, (Dkts. 10, 20), and he filed a lengthy opposition brief,[3] (Dkt. 22). Hingeley, Vradenburgh, and the Albemarle County Commonwealth's Attorney's Office (together, the "Commonwealth's Attorney Defendants") filed a reply brief. (Dkt. 24.)

## II.   Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over a complaint. *See* Fed. R. Civ. P. 12(b)(1). A defendant may bring either a facial or factual challenge to subject matter jurisdiction. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). A facial challenge, which Defendants raise in this case, "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted). "[T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-

---

[3] Azimi's opposition brief expands significantly on the allegations in his complaint. A party may not amend a complaint through briefing on a motion to dismiss, so the additional allegations that appear in Azimi's opposition brief are not properly before the court. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013). Even if they were, those allegations—as well as the allegations in Azimi's other letters—fall well short of stating any claim for relief.

pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). The court also may consider documents attached to the complaint as exhibits. Fed. R. Civ. P. 10(c); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). To state a plausible claim, the complaint must allege more than "labels and conclusions" or "naked assertion[s]" unsupported by "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

The court liberally construes pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, liberal construction "does not transform the court into an advocate" for *pro se* litigants. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### III.  Analysis

#### A. The court lacks subject matter jurisdiction over some of Azimi's claims.

Defendants raise multiple jurisdictional challenges to Azimi's claims. They first argue that the *Rooker-Feldman* doctrine requires the court to dismiss the complaint because it challenges prior state-court decisions in the FOIA and child-custody cases. (Commonwealth's Attorney Defs.' Mem. at 4–6 (Dkt. 18); Bunch Mem. at 7–8 (Dkt. 14).) The *Rooker-Feldman* doctrine prohibits federal district courts from conducting appellate review of a state-court decision. *See T.M. v. Univ. of Md. Med. Sys. Corp.*, 139 F.4th 344, 348 (4th Cir. 2025); *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006). It holds that district courts may not exercise subject matter jurisdiction in "cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *T.M.*, 139 F.4th at 349 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The key question is whether the plaintiff "seeks redress for an injury caused by the state-court decision itself." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718 (4th Cir. 2006). If that is the case, a plaintiff "may not escape the jurisdictional bar of *Rooker-Feldman* by merely refashioning its attack on the state court judgment[] as a § 1983 claim." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997).

At least some of Azimi's claims are precluded by the *Rooker-Feldman* doctrine. For one, his complaint includes allegations that directly challenge the state court's March 21, 2025 decision denying his FOIA claims. He asserts that the state court, in issuing that decision, ignored "clear evidence to the contrary" and "deliberately omitted reference" to misconduct by the Albemarle County Commonwealth's Attorney's Office. (Compl. ¶ 25.) In his opposition brief, Azimi acknowledges that he decided to file this lawsuit in federal court instead of appealing the state court's decision dismissing his FOIA claims. (Pl.'s Opp'n at 6.) And among other requests for relief, he asks this court to "vacate" the state court's March 21, 2025 order. (Compl. at 6.) Azimi cannot seek that relief in this court. The same is true of Azimi's allegations related to decisions in his other state-court proceedings. Parts of his complaint allege that unspecified "custody or criminal rulings" were "tainted by fraud or withheld evidence," and he requests that this court vacate them. (Compl. at 6.) To the extent

- 6 -

that Azimi asks this court to review and reject any prior state-court judgments, the *Rooker-Feldman* doctrine bars his claims.[4]

Apart from the *Rooker-Feldman* issue, the Commonwealth's Attorney Defendants also argue that they are entitled to Eleventh Amendment immunity from Azimi's damages claims against them in their official capacity. (Commonwealth's Attorney Defs.' Mem. at 12.) The court agrees. The Eleventh Amendment bars claims for money damages against a state officer sued in his or her official capacity. *See, e.g.*, *Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006). As several courts have recognized, Commonwealth's Attorneys in Virginia are state officers who enjoy sovereign immunity from claims for damages in their official capacity. *See Weiner v. Albemarle Cnty.*, No. 3:17-cv-00046, 2018 WL 542979, at *3–4 & n. 1 (W.D. Va. Jan. 24, 2018) (collecting cases); *Davison v. Plowman*, 247 F. Supp. 3d 767, 780–81 (E.D. Va. 2017), *aff'd*, 715 F. App'x 298 (4th Cir. 2018). The same is true for Assistant Commonwealth's Attorneys. *See Dixon v. Gravely*, No. 4:17-cv-00079, 2018 WL 1733988, at *2 (W.D. Va. Apr. 10, 2018); *Savage v. Cnty. of Stafford*, No. 1:09-cv-1328, 2010 WL 1873222, at *3–4 (E.D. Va. May 4, 2010).

Because Hingeley and Vradenburgh are immune from suit for damages in their official capacities, the court will dismiss those claims for lack of subject matter jurisdiction. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (noting that Eleventh Amendment immunity deprives federal courts of subject matter jurisdiction to hear

---

[4] Bunch also asks the court to dismiss the complaint based on the *Younger* abstention doctrine. (Bunch Mem. at 6–7.) The court declines that invitation at this stage. The Fourth Circuit has explained that "*Younger* abstention is appropriate only in those cases in which (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." *Emps. Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995), *cert. denied*, 516 U.S. 1094 (1996). Based on the current record, the court cannot determine whether those criteria are all satisfied, as it is unclear how much, if any, of the child-custody case remains ongoing. (*See* Bunch Mem. at 6 (noting that the JDR Court scheduled an August 12, 2025 hearing on Azimi's motion to amend a custody and visitation order).)

claims). The only official-capacity claims against Hingeley and Vradenburgh that are not barred by Eleventh Amendment immunity are those that seek prospective injunctive relief. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 746 (4th Cir. 2018).

The court will dismiss Azimi's claims against the Albemarle County Commonwealth's Attorney's Office because it is not an entity capable of being sued. In Virginia, Commonwealth's Attorneys are independent constitutional officers. *See* Va. Const. art. VII, § 4; *Burnett v. Brown*, 72 S.E.2d 394, 395 (Va. 1952). "Courts have long held that the offices of Virginia constitutional officers are not capable of being sued under Virginia law because they are not legally cognizable entities apart from the officers themselves in their official capacities." *Weiner*, 2018 WL 542979, at *4 n.3 (collecting cases); *see, e.g.*, *Easter v. Virginia*, No. 4:05cv162, 2006 WL 5915495, at *2 (E.D. Va. Sept. 5, 2006).

**B. Azimi's federal claims are subject to dismissal under Rule 12(b)(6).**

After reviewing the complaint, the parties' briefing on the motions to dismiss, and Azimi's other filings in this case, the court concludes that Azimi fails to state any claim for relief under § 1983, § 1985(3), or § 1986.[5]

1. <u>Azimi does not state a plausible § 1983 claim against Hingeley, Vradenburg, or Bunch.</u>

To state a claim under § 1983, Azimi must allege (1) that he was deprived of a federal constitutional or statutory right, and (2) that the deprivation was committed under color of

---

[5] Hingeley, Vradenburgh, and Bunch also argue that they are entitled to qualified immunity from liability under the federal statutes, and Bunch further argues that she has absolute derivative judicial immunity in this case. (*See* Commonwealth's Attorney Defs.' Mem. at 7–10; Bunch Mem. at 5–6, 11–12.) Based on the limited allegations about Bunch's conduct and role during the child-custody proceedings, the court is unable to determine whether Bunch is entitled to derivative judicial immunity. *See McCray v. Maryland*, 456 F.2d 1, 3–4 (4th Cir. 1972) (explaining that absolute judicial immunity extends to court clerks and other quasi-judicial officials only when they "exercise a discretion similar to that exercised by judges"). Because Azimi has not plausibly alleged any violation of federal law, the court need not conduct the full qualified-immunity analysis.

state law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Azimi alleges that Defendants violated his First Amendment right to petition and his Fourteenth Amendment rights to due process and equal protection. (Compl. ¶¶ 27–29.) He has not alleged facts that plausibly establish any violation of those constitutional rights.

Azimi first claims that Defendants' denials of his FOIA requests constituted First Amendment retaliation and also violated the First Amendment by interfering with his access to courts. (*See id.* ¶ 27; Pl.'s Opp'n at 22–25.) To state a First Amendment retaliation claim, he must allege that he (1) engaged in protected First Amendment activity, (2) Defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and Defendants' conduct. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Azimi asserts that he engaged in protected activity by filing the FOIA requests, participating in his state-court cases, and advocating for his parental rights, and that Defendants retaliated against him by refusing to disclose records in response to his FOIA requests. (Pl.'s Opp'n at 23.) The alleged facts do not support an inference that Defendants committed a retaliatory adverse action by denying Azimi's FOIA requests. *See, e.g.*, *Miller v. Cnty. of Lancaster*, No. 5:24-cv-05338, 2025 WL 757481, at *14 (E.D. Pa. Mar. 7, 2025) ("Simply put, a denial of a records request is not evidence of retaliation against the requestor. It indicates only that the request was not granted."). Azimi alleges that Defendants also retaliated against him by treating him unequally in his court cases and engaging in other unspecified forms of harassment and misconduct, (Pl.'s Opp'n at 23), but those allegations are far too vague to plausibly establish an adverse action. Even if Azimi had identified an adverse action, he has not alleged any non-conclusory

facts that would support a causal link between his protected activity and Defendants' alleged misconduct.

Nor has Azimi stated a constitutional claim for denial of access to courts. A plaintiff's right of access to courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). A plaintiff alleging a denial-of-access claim must plead facts showing that the defendant actually "hindered his efforts to pursue" a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see Christopher*, 536 U.S. at 415. The plaintiff must identify the nonfrivolous claim that was lost as a result of the defendant's alleged interference with the plaintiff's access to court. *Christopher*, 536 U.S. at 415–16. In other words, "the cause of action in the underlying action, 'whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.'" *Conner v. Henry Cnty. Sheriff's Off.*, No. 7:23-cv-00061, 2023 WL 3026740, at *2 (W.D. Va. Apr. 20, 2023) (quoting *Christopher*, 536 U.S. at 415). Azimi's allegations fall well short of this standard. He does not describe how Defendants' denial of his requests for "judicial schedules and records of judicial assignment" had any effect on the claims he raised or intended to raise in the state cases. (Compl. ¶ 18.) His bare allegations that Defendants' actions hindered his ability to litigate those cases do not suffice. (*See* Pl.'s Opp'n at 25.)

Azimi also fails to state a due process claim under § 1983. That claim alleges that Defendants compromised the fairness of the child-custody proceedings by denying his records requests and committing other unspecified misconduct. (Compl. ¶ 28; Pl.'s Opp'n at 25–26.) Azimi alleges that he was deprived of his parental rights without due process of law as a result

- 10 -

of Defendants' conduct. (*Id.*) The denial of Azimi's requests for judicial schedules and records of judicial assignment does not plausibly rise to the level of a procedural or substantive due process violation. The fact that Azimi had an opportunity to challenge the denials of his FOIA requests in state court further undermines his claim that those denials violated his due process rights. *See, e.g.*, *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008). Azimi has not alleged any non-speculative facts showing that Hingeley, Vradenburgh, or another prosecutor played any other role in the child-custody case, let alone one that compromised the fundamental fairness of the proceedings. The same is true with respect to Bunch. The court cannot reasonably infer that she violated due process by sharing inaccurate information with the New York family court and then correcting the issue minutes later. (*See* Compl. ¶¶ 15–17.)

Azimi's equal protection claim is also devoid of factual support. He asserts that Defendants treated him differently than similarly situated parties "because of his pro se status and lack of political or legal connections," but those allegations are based entirely on unsupported speculation. (Compl. ¶ 29; *see* Pl.'s Opp'n at 26–27.)

Accordingly, the court will dismiss the § 1983 claims to the extent they are not already barred by the *Rooker-Feldman* doctrine and sovereign immunity.

2. <u>Azimi does not state a plausible § 1985(3) or § 1986 claim against Hingeley, Vradenburg, or Bunch.</u>

To state a claim under § 1985(3), Azimi must allege

(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Strickland v. United States*, 32 F.4th 311, 360 (4th Cir. 2022) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). Section 1986 "provides a cause of action against anyone who has knowledge of a § 1985 conspiracy and who, 'having the power to prevent or aid in preventing the commission of' acts pursuant to that conspiracy, 'neglects or refuses so to do.'" *Id.* (quoting 42 U.S.C. § 1986)). Section 1986 claims, then, are derivative of § 1985 violations. *Id.*

Azimi's § 1985 claim fails for at least two reasons. For one, he has not alleged facts that demonstrate "an agreement or a 'meeting of the minds' by [D]efendants to violate [his] constitutional rights." *Simmons*, 47 F.3d at 1377. A plaintiff who brings a § 1985(3) claim must show "that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." *Id.* at 1378 (cleaned up). The Fourth Circuit has emphasized that this standard is difficult to satisfy, *see id.* at 1377, and Azimi's complaint does not come close to meeting it. Azimi merely speculates that Defendants colluded to withhold records from him. (*See* Compl. ¶ 30; Pl.'s Opp'n at 28.) He does not allege any specific facts that suggest Defendants aligned on such a plan with the intent to violate his constitutional rights. This court must, and it does, dismiss a § 1985(3) claim when "the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377.

Azimi also fails to allege that Defendants were motivated by any "class-based" discriminatory animus. "To meet the requirement of a class-based discriminatory animus[ under § 1985(3)] . . . the class must possess the discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex." *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) (internal quotation marks omitted);

*see Bhattacharya v. Murray*, 515 F. Supp. 3d 436, 463–64 (W.D. Va. 2021). Azimi has alleged no facts suggesting that Defendants acted with animus towards him, and certainly not any that was "class-based."

The court therefore will dismiss Azimi's § 1985(3) claim. Because Azimi has not stated a claim under § 1985(3), his § 1986 claim must be dismissed as well.[6] *See Strickland*, 32 F.4th at 362.

### C. The court will not exercise supplemental jurisdiction over any remaining state-law claims.

Finally, to the extent that Azimi alleges state-law claims that are not barred by the *Rooker-Feldman* doctrine or sovereign immunity, the court declines to exercise supplemental jurisdiction over them.

A district court may decline to exercise supplemental jurisdiction where, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court has "wide latitude in determining whether or not to retain jurisdiction" in this scenario. *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). "[G]enerally, when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Id.* (internal quotation marks omitted). In deciding whether to exercise supplemental jurisdiction, the court weighs multiple factors, including "convenience and fairness to the parties, the existence of any

---

[6] Azimi also cites federal criminal statutes when asking the court to refer Defendants for criminal investigation. (*See* Compl. ¶ 33 (citing 18 U.S.C. § 1519, § 241, § 242).) A private citizen has no right to compel law enforcement officials or prosecutors to investigate or bring criminal charges against a person. *See Trump v. Montgomery Cnty. Sheriff*, No. 7:10-cv-00142, 2010 WL 1278596, at *1 (W.D. Va. Mar. 31, 2010). Nor do the criminal statutes that Azimi cites provide a private cause of action for any form of relief.

underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). After balancing the relevant factors in this case, the court finds they clearly weigh in favor of declining supplemental jurisdiction over Azimi's state claims.

## IV. Conclusion

For the reasons outlined above, the court will **GRANT** Defendants' motions to dismiss (Dkts. 7, 12, 13). The court will **DISMISS** the claims barred by the *Rooker-Feldman* doctrine or by sovereign immunity **without prejudice** for lack of subject matter jurisdiction. The court will **DISMISS** Azimi's remaining § 1983, § 1985(3), and § 1986 claims **without prejudice** for failure to state a claim on which relief may be granted. The court declines to exercise supplemental jurisdiction over any remaining state-law claims and will **DISMISS** those claims **without prejudice**.

The court will **GRANT** Azimi leave to file an amended complaint. The amended complaint shall not allege any claims the court has dismissed for lack of subject matter jurisdiction, and the court reminds Azimi that the Albemarle County Commonwealth's Attorney's Office is not a proper defendant. If Azimi does not file an amended complaint within **21 days** of this date, the court will close this case.

Finally, the court will **DENY** Azimi's "request for non-retaliation and preservation [of] relief" (Dkt. 25). If Azimi wishes to allege additional claims against Defendants or seek additional forms of relief, he may include them in his amended complaint.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this 23rd day of October, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE