CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 20, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Mohammed Azimi, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00020 |
| | ) | |
| Stephanie Michelle Bunch *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mohammed Azimi, *pro se*, brought this action under 42 U.S.C. § 1983 alleging a violation of his First Amendment rights by Defendants Stephanie Bunch, Holly Vradenburgh, and James Hingeley. On August 10, 2026, the court dismissed Azimi's amended complaint without prejudice for lack of subject matter jurisdiction. (Dkt. 44.) This matter is before the court on Azimi's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). (Dkt. 45.) For the reasons stated below, the court will grant in part and deny in part Azimi's Rule 59(e) motion.

## I. Background

The court assumes familiarity with the factual background and procedural history of this case, which are laid out in the court's prior memorandum opinions. (Oct. 23, 2025 Mem. Op. at 2–4 (Dkt. 26); Aug. 10, 2026 Mem. Op. at 2–3 (Dkt. 44).)

On August 10, 2026, the court issued a memorandum opinion and order granting Defendants' motion to dismiss for lack of subject matter jurisdiction. (Dkt. 44.) The court

found that the *Rooker-Feldman* doctrine deprived the court of subject matter jurisdiction to consider Azimi's claim. (*Id.* at 4–6.) For that reason, the court did not address Defendants' alternative arguments in favor of dismissal. Azimi timely filed a motion to alter or amend the judgment under Rule 59(e) on August 21, 2026, arguing that *Rooker-Feldman* should not bar his claim. (Dkt. 45.) Defendants did not respond. On the same day, Azimi filed a notice of appeal, which is pending the court's resolution of this post-judgment motion. (Dkt. 46.)

## II. Standard of Review

"Rule 59(e) authorizes motions 'to alter or amend a judgment,' provided they are filed within 28 days of the judgment. This rule was promulgated to make clear that the district court, with broad discretion, could 'rectify its own mistakes in the period immediately following the entry of judgment.'" *Daulatzai v. Maryland*, 97 F.4th 166, 177 (4th Cir. 2024) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). "The standard for granting the motion is broad, as a court is authorized to reconsider its ruling on virtually any basis that it determines might have been an error or mistake in its judgment, although 'courts will not address new arguments or evidence that the moving party could have raised before the decision issued.'" *Id.* at 178 (quoting *Banister v. Davis*, 590 U.S. 504, 508 (2020)). In the Fourth Circuit, the grounds for Rule 59(e) motions are limited to "three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available [previously]; or (3) to correct a clear error of law or prevent manifest injustice.'" *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)).

## III. Analysis

Upon reconsideration, the court agrees with Azimi that the *Rooker-Feldman* doctrine does not bar consideration of his First Amendment claim in federal court. Nevertheless, Azimi's amended complaint fails to state a claim for relief under the First Amendment. Therefore, the court will amend its prior opinion to correct an error of law, but it will not vacate the prior judgment dismissing Azimi's amended complaint without prejudice.

### A. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). However, "a federal plaintiff 'encounters no *Rooker-Feldman* shoal' when presenting an independent claim, even if 'the same or a related question was earlier aired between the parties in state court.'" *LaMar v. Ebert*, 681 Fed. App'x 279, 287 (4th Cir. 2017) (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)). "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil Corp.*, 544 U.S. at 293 (cleaned up) (citation omitted).

Azimi's claim is that Defendants are withholding records to which he is entitled under the First Amendment. (Am. Compl. ¶ 16.) Therefore, his asserted injury is the violation of

his First Amendment rights caused by Defendants' action of allegedly refusing to provide him these records. The fact that Azimi previously tried and failed to gain access to the records through the Virginia Freedom of Information Act ("VFOIA"), Va. Code Ann. § 2.2-3700 *et seq.*, in Albemarle Circuit Court does not bar a federal court from considering his First Amendment claim. "A plaintiff's injury at the hands of a third party may be 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the state-court judgment." *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)). Even if Azimi had never filed his mandamus actions in state court, he would still be able to assert the same injury in this case: the alleged deprivation of his First Amendment right to access certain records. The key is that Azimi's asserted injury flows from the Defendants' alleged refusal to hand over certain records to which he claims access under federal law, not VFOIA. And the state court only confirmed that the Defendants' denial of Azimi's VFOIA requests complied with state law without saying anything about federal law. Of course, whether he is actually entitled to these alleged records as a matter of First Amendment law is a question of merits, not jurisdiction.

Azimi does not ask this court to reverse or reject the state court's judgment that he was not entitled to mandamus under VFOIA. Instead, his present suit only alleges a violation of federal law, namely the First Amendment. To award Azimi injunctive relief under § 1983 for a violation of the First Amendment would not overturn the state court's judgment because that judgment is not the source of Azimi's asserted injury. Instead, the state court only determined that Defendants had complied with VFOIA and provided Azimi with all the

records to which he was entitled under state law. (Pl.'s Ex. 12 at 1 (Dkt. 28-13).) To decide Azimi's First Amendment claim, the court need not and does not review the correctness of the state court's interpretation or application of VFOIA. It is possible that a plaintiff may not be entitled to certain judicial records under state law yet still have a First Amendment right to access those records; therefore, a ruling in favor of Azimi would neither conflict with nor undermine the state court's judgment, which was based only on VFOIA. Nor does the fact that Azimi requests relief that the state court previously declined to provide necessarily bar his claim. *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006) ("The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker–Feldman*, of the state-court judgment" (quoting *Hoblock*, 422 F.3d at 88).)

To summarize, a plaintiff is not automatically barred by *Rooker-Feldman* whenever he requests relief that a state court previously refused to award him. While this fact pattern may raise problems under preclusion doctrine, *Rooker-Feldman* only comes into play when the plaintiff's asserted injury actually flows from the state court's *judgment*—not the state court's failure to remedy some other independent injury. Though Azimi lost his VFOIA suits in state court, his injury in this suit comes from the Defendants' alleged refusal to provide access to certain documents under federal law, not state law. "Because [Azimi] is not a state-court loser complaining of an injury caused by a state-court judgment and specifically seeking district court review and rejection of that judgment, his federal claims are not barred by the *Rooker-Feldman* doctrine." *Hulsey*, 947 F.3d at 252. Since *Rooker-Feldman* does not divest this court of

subject matter jurisdiction over this action, the court will now address Defendants' other jurisdictional objections to Azimi's amended complaint.

**B. Article III Standing**

Defendants Vradenburgh and Hingeley assert that Azimi lacks Article III standing to bring his suit. (Vradenburgh & Hingeley Supp. Mem. at 3–5 (Dkt. 32).) Standing requires an injury in fact that is fairly traceable to the defendants' challenged conduct and likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). Furthermore, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Thus, "[w]hen assessing whether a plaintiff possesses Article III standing to sue, a court 'accept[s] as valid the merits of [the plaintiff's] legal claims.'" *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (quoting *FEC v. Cruz*, 596 U.S. 289, 298 (2022)). Otherwise, "the court would effectively be deciding the merits under the guise of determining the plaintiff's standing.'" *Woods v. Edmonds*, No. 1:23-CV-780, 2024 WL 3455288, at *8 (M.D.N.C. June 21, 2024) (quoting *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 371 (D.C. Cir. 2020)).

First, Vradenburgh and Hingeley argue that Azimi has not alleged an injury in fact. However, Azimi claims a violation of his First Amendment rights. "An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). For standing purposes, it is not necessary that Azimi link the asserted First Amendment violation to any concrete case outcome, because the

deprivation of a constitutional right is itself an injury in fact. *See Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) (noting that any plaintiff "who seeks and is denied access to judicial records sustains an injury").

Vradenburgh and Hingeley further contend that Azimi has not satisfied the traceability or redressability prongs of standing because they do not actually possess any of the records that Azimi seeks. (Vradenburgh & Hingeley Supp. Mem. at 4–5.) They argue that they have not caused any injury to Azimi by failing to provide documents they do not possess, nor would an order from this court redress any such injury. (*Id.*) Azimi's amended complaint asserts that Defendants have not turned over "judicial schedules and records of judicial reassignment." (Am. Compl. ¶¶ 9–10.) He further alleges that Vradenburgh and Hingeley specifically have "produced no orders signed by a substitute judge, no judicial assignment memoranda, and no bench calendar confirming who presided over Plaintiff's JDR matters during that week." (*Id.* ¶ 11.) However, the amended complaint on its face is unclear as to the factual basis for Azimi's belief that these documents exist, or that Vradenburgh and Hingeley possess them. Regardless, the court ultimately need not resolve this factual dispute because even if Azimi adequately alleged the existence of these documents in Vradenburgh and Hingeley's custody and thus satisfied the standing inquiry, his claim would still fail as a matter of law as explained below.

### C. Judicial Immunity

Defendant Bunch asserts that as the clerk of court, she has derivative judicial immunity from Azimi's suit. (Clerk Def.'s Supp. Mem. at 4–5 (Dkt. 35).) Judges possess absolute

immunity from suit for judicial acts unless those acts were taken in "the clear absence of all jurisdiction." *Hamilton v. Murray*, 648 Fed. App'x 344, 344–45 (4th Cir. 2016) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). Court clerks enjoy "derivative absolute judicial immunity when they act in obedience to a judicial order or under the court's direction." *Id.* at 345.

The case law in this circuit reveals that clerks' derivative immunity turns on whether the acts in question are quasi-judicial or ministerial in character. In *McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1972), the Fourth Circuit denied judicial immunity to a clerk who negligently impeded the filing of the plaintiff's papers, as that was a ministerial duty and not a quasi-judicial one. *Id.* at 4. *McCray* was partially abrogated by *Daniels v. Williams*, 474 U.S. 327 (1986), to the extent that *negligent* denial of access to courts is not actionable under 42 U.S.C. § 1983. *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). However, *Daniels* did not address judicial immunity, and the Fourth Circuit has continued to distinguish between ministerial versus quasi-judicial acts for the purposes of immunity for a clerk. *See Ross v. Baron*, 493 F. App'x 405, 407 (4th Cir. 2012) (suggesting that a clerk enjoys no immunity for wrongfully failing to issue summons upon the filing of a complaint); *see also Vaughn v. Foltz*, No. 2:16-CV-61, 2017 WL 9480141, at *4–*5 (E.D.N.C. June 22, 2017) (distinguishing between quasi-judicial duties, where clerks were vested with discretion, and ministerial acts, such as scheduling and docketing a hearing pursuant to a statute).

While there is limited case law that directly addresses the facts here, *Courthouse News Service v. Schaefer*, 2 F.4th 318 (4th Cir. 2021), may be instructive. In that case, the Clerk of the

Circuit Court for Norfolk, Virginia, and the Clerk of the Circuit Court for Prince William County, Virginia were both sued in their official capacities for delaying public access to newly filed civil complaints in violation of the First Amendment. *Id.* at 322. Neither the district court nor the Fourth Circuit ever discussed the issue of judicial immunity, nor did any party apparently raise the issue. *See generally id.*; *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532 (E.D. Va. 2020).

There is no evidence in the amended complaint that Bunch's alleged refusal or failure to provide the requested documents was pursuant to a judicial order or under the court's direction. While the amended complaint provides no insight into the machinations of how the clerk's office responds to a VFOIA request, "it also provides no indicia that [Bunch's] failure to take action with respect to Plaintiff's [request for documents]—assuming, at this point, that [Bunch] was under a duty to take such action—was a product of discretion afforded to [Bunch] or was in accordance with a judicial order." *Harbeck v. Smith*, 814 F. Supp. 2d 608, 630 (E.D. Va. 2011). Bunch's only argument is that she was acting in her official capacity as Clerk of Court in responding to Azimi's requests and therefore she was acting in discharge of her lawful duties. (Clerk Def.'s Supp. Mem. at 4–5.) But Azimi's argument is that Bunch violated the First Amendment by refusing to provide him records to which he was entitled by law. As alleged by Azimi, Bunch's failure to provide documents would exceed her lawful authority and act beyond the scope of her role. Therefore, the court concludes that Bunch does not enjoy derivative judicial immunity from Azimi's suit.

**D. Failure to State a Claim**

Having addressed the jurisdictional issues, the court now considers the merits of Azimi's claim. For the reasons below, Azimi's amended complaint fails to state a claim under the First Amendment against any of the Defendants.

Azimi's amended complaint primarily relies on *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014), in which the Fourth Circuit held that the First Amendment provides "a qualified right of access to judicial documents and records filed in civil and criminal proceedings" to the press and public. *Id.* at 265. But "[u]nlike the common-law right [to access court records], the First Amendment right of access extends only to certain judicial proceedings and records." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024). "The First Amendment provides a right of access to a judicial proceeding or record: (1) that 'ha[s] historically been open to the press and general public;' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" *Schaefer*, 2 F.4th at 326 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–10 (1986)) (alteration in original). This two-prong test is known as the experience and logic test—"[i]f both experience and logic indicate that a judicial record has in the past, and should in the future, be afforded public access, a qualified First Amendment right of public access attaches to it." *Id.*

The court has already considered similar claims by Azimi in a related case, *Azimi v. Platania*, No. 3:26-cv-00001, 2026 WL 2446402 (W.D. Va. Aug. 20, 2026). In its opinion, the court determined that the kinds of records Azimi sought were not judicial records within the meaning of *Public Citizen*, nor was there any historical tradition of access to those documents. *Id.* at *4–*5. The same is true here.

The Fourth Circuit has held that "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). Records identifying which judge presided over court proceedings on specific days and related administrative assignments play no role in any adjudicative process or adjudicate any substantive rights. *See Covington v. Semones*, No. 7:06-cv-00614, 2007 WL 1170644, at *2 (W.D. Va. Apr. 17, 2007) ("[T]he First Amendment right attaches only to particular documents, such as those filed in connection with a dispositive motion in a civil case and those filed in connection with plea hearings and sentences in criminal matters."); *United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 69 F.4th 1, 15 (1st Cir. 2023) (distinguishing judicial records from "documents that relate merely to the judge's role in management of the trial" (cleaned up)). Nor were the requested documents ever filed with a court. *See Washington v. Bruraker*, No. 3:02-cv-00106, 2015 WL 6673177, at *5 (W.D. Va. Mar. 29, 2015) (the right of access is "generally designed to allow the public access to documents *as they are filed with the court*"); *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296, at *3 (4th Cir. 1995) (unpublished table opinion) (holding that "the mere filing of a document" is still not enough to "trigger[] the First Amendment guarantee of access"). Thus, Azimi's requested documents are simply not *judicial* records to which the First Amendment presumption of public access attaches.

What Azimi seeks are not judicial records, such as filings in litigation or the docket sheet for a particular case, but instead administrative information that may be possessed by the government. The Supreme Court has ruled that the First Amendment does not "mandate[]

a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality opinion). The Fourth Circuit has also noted that recognized that "there is generally no First Amendment claim based on the government's denial of access" to information "compiled, controlled, and maintained by the government." *Fusaro v. Cogan*, 930 F.3d 241, 250 (4th Cir. 2019). Thus, the First Amendment does not require Defendants to disclose the records requested by Azimi, assuming such records even exist. *See Houchins*, 438 U.S. at 14 ("The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act.").

At bottom, Azimi wants the equivalent of a judicial attendance sheet for the Albemarle County Juvenile and Domestic Relations Court that would indicate which judges were working in the courthouse on particular days in one week in April 2024. Even if such a document existed, the court would have no authority to order Defendants to provide it to Azimi, because the First Amendment does not entitle him to documents of this kind as a matter of law. Nor does the First Amendment require Defendants to generate such a document and provide it to Azimi if it does not already exist. Therefore, the court simply lacks the power to provide Azimi with the relief that he requests.

**E. Disposition of Rule 59(e) Motion and Request for Reassignment**

For the purposes of Azimi's pending appeal, the court's disposition of Azimi's Rule 59(e) motion restores the finality of the court's August 10, 2026 order dismissing the amended complaint without prejudice. The court's judgment is only amended as to the reasoning of the memorandum opinion. "[T]he filing of a timely Rule 59(e) motion suspends the finality

of the judgment, with the judgment's finality being restored only upon disposition of the motion. The ruling on the motion thus 'merges' with the prior ruling of the judgment so as to constitute a single judgment. And on appeal, the court reviews that 'one judgment' and 'addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision.'" *Daulatzai*, 97 F.4th at 178 (citations omitted) (quoting *Banister*, 590 U.S. at 509).

Finally, the court notes that Azimi has filed a letter addressed to the Chief Judge of this district requesting administrative review and reassignment of his cases in this court. (Dkt. 53.) While 28 U.S.C. § 137(a) authorizes chief judges of district courts to assign cases among the judges in a district, no provision of that statute or the Federal Rules of Civil Procedure authorizes parties in litigation to make such requests to a chief judge. The court has previously denied Azimi's motion for recusal and reassignment of his case to another judge. (Dkt. 43.) To the extent that the court construes Azimi's letter as a motion to transfer this case to another judge, it is denied.

## IV. Conclusion and Order

For the reasons stated, the court **GRANTS in part** and **DENIES in part** Azimi's motion to alter or amend the judgment under Rule 59(e). (Dkt. 45.) The motion is **GRANTED** only to the extent necessary to amend the court's prior memorandum opinion and order, (Dkt. 44), as set forth herein. The portion of the court's prior memorandum opinion applying the *Rooker-Feldman* doctrine to the amended complaint is hereby vacated. The motion is **DENIED** in all other respects. Azimi's request for administrative review and reassignment to another judge is also **DENIED**. (Dkt. 53.)

An appropriate order will issue.

**ENTERED** this 20th day of November, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE